845 P.2d 858

**Decatur D. SPARKS, an infant, By and Through his next friend and Mother,**

**Deborah Sparks HALEY, Petitioner–Appellant,**

v.

**Larry D. SPARKS, Respondent–Appellee.**

No. 13759.

Court of Appeals of New Mexico.

Dec. 17, 1992.

Robert S. Orlik, James F. McDowell, III, Clovis, for petitioner-appellant.

Marion Ty Rutter, Clovis, for respondent-appellee.

## OPINION

BLACK, Judge.

Deborah Sparks Haley (Mother) brought this action as next friend for her ten-year-old son (Child), seeking to establish that her former husband, Larry Sparks (Sparks), was not Child's father. Sparks filed a motion to dismiss and a motion to appoint a guardian ad litem. The district court denied the motion to appoint a guardian ad litem and did not expressly rule on the motion to dismiss, but later ruled that the divorce action between Mother and Sparks was res judicata and collateral estoppel as to the issue of paternity, and dismissed the action with prejudice. We hold that Mother was not the proper party to initiate this action as guardian ad litem and therefore the motion to dismiss should have been granted.

## FACTS.

Sparks and Mother were married on June 10, 1977. Child was born during the marriage, on December 28, 1980. Both Sparks and Mother acknowledged Sparks's paterni-ty in a writing filed with the Vital Statistics Bureau of the State of New Mexico. Sparks and Mother were divorced in March 1989. In their property and custody agreement, the parties to the divorce proceeding (i.e., Mother and Sparks) represented to the court that the child was born "of the marriage." A guardian ad litem was not appointed to represent Child in the divorce proceeding. Pursuant to their custody agreement and subsequent court order, Mother received custody of Child and Sparks paid child support and received visitation rights.

In April 1991, the district court gave Sparks sole custody and terminated child support to Mother. Sparks has publicly acknowledged Child as his own since birth. Sparks has also maintained a personal, financial, and custodial relationship with Child.

## SECTION 40–11–9 OF THE UNIFORM PARENTAGE ACT DOES NOT AUTHORIZE THIS SUIT.

In September 1991, Child, by and through Mother as "next friend," filed this action "to establish the existence or nonexistence of the parent/child relationship" between Child and Sparks, i.e., paternity. Mother asserts she has the authority to bring this action under NMSA 1978, Section 40–11–9 (Repl.Pamp.1989). This provision is part of New Mexico's Uniform Parentage Act, NMSA 1978, §§ 40–11–1 to –23 (Repl.Pamp.1989) (the Act). Section 40–11–9 reads:

The child shall be made a party to the action. If he is a minor, he shall be represented by his general guardian or a guardian ad litem appointed by the court, or both. The court may align the parties.

There is an absolute prohibition against a parent representing the child in the uniform act. Unif. Parentage Act § 9, 9B U.L.A. 312 (1973).[1] Although the New

1. Section 9 of the uniform act provides:
   The child shall be made a party to the action. If he is a minor he shall be represented by his general guardian or a guardian ad litem appointed by the court. The child's mother or father may not represent the child as guardian or otherwise. The court may appoint the [appropriate state agency] as guardian ad litem for the child. The natural mother, each man presumed to be the father

Mexico legislature did not adopt this absolute prohibition, it did adopt the requirement that the minor be represented by the general guardian or a guardian ad litem. There is no question in this case that Mother was not appointed to act as guardian ad litem. Sparks argues that Mother was also not the "general guardian" under Section 40–11–9 and therefore lacked the capacity to initiate this action. We agree.

A mother who was never appointed by the court may not be a proper "general guardian" for purposes of a statute requiring that such a guardian represent a minor in legal proceedings. *Shearer v. Coats*, 434 N.W.2d 596 (S.D.1989). Certainly the mere allegation that the mother is the child's next friend does not make the mother the appropriate representative of the child in a paternity action. *Lechner v. Whitesell by Whitesell*, 811 S.W.2d 859 (Mo.Ct.App.1991).

The Appellate Court of Illinois recently determined that a mother who did not have custody was not a "general guardian" with standing to challenge her former husband's paternity under the Illinois Parentage Act.[2] *In re Marriage of Koenig*, 211 Ill.App.3d 1045, 156 Ill.Dec. 385, 570 N.E.2d 861 (1991). In *Koenig*, Shirley and Harold Koenig were married in September 1984 and a daughter, Krista, was born in 1985. 156 Ill.Dec. at 386, 570 N.E.2d at 862. Shortly after the birth, Harold sought a dissolution of the marriage. During the dissolution proceedings, Shirley repeatedly referred to Krista as Harold's baby; a birth certificate indicating Harold as the father was also filed in the divorce proceedings. *Id.* The court entered a judgment based in part on an agreement of the parents which represented that Krista "'was born to this marriage.'" *Id.* Custody was

awarded to Harold, but both Harold and Shirley continued to file various pleadings regarding custody until Harold sought suspension of Shirley's visitation rights. Shortly thereafter, Shirley, as "'natural guardian,'" filed a petition to "declare the parentage" of the child. *Id.* The trial court ruled that the mother lacked standing to bring the action. *Id.*, 156 Ill.Dec. at 386–87, 570 N.E.2d at 862–63.

In *Koenig*, the Appellate Court of Illinois held that, since the divorce court had awarded custody to the father, the mother could not qualify as a "general guardian" under Section 7 of the Illinois Parentage Act and therefore lacked standing to initiate the action, reasoning:

The [Illinois] Parentage Act also provides that "[i]f any party is a minor, he or she may be represented by his or her general guardian or a guardian ad litem appointed by the court, * * *." (Ill.Rev.Stat. 1987, ch. 40, par. 2507(c).) The legislature has thereby limited a minor child's representative to either his or her general guardian or court appointed guardian *ad litem.* Although the Act does not itself define "general guardian," similar statutory provisions have been defined as "the guardian of the person, or of all the property of the ward * * * *" and, absent appointment by the court, does not include a minor's natural mother (*Shearer v. Coats* (S.D.1989), 434 N.W.2d 596, 598); "* * * one appointed by the Supreme, or Surrogate's Court * * *" (*In re McGuire's Estate* (1921), 115 Misc. 84, 189 N.Y.S. 62, 63); and "one who has the general care and control of the person and estate of his ward." (Black's Law Dictionary 635 (5th ed.1979).) In the case *sub judice*, Shirley does not qualify as Krista's general guardian because Harold was given "the sole permanent care, custody, control and education of the mi-

---

under Section 4, and each man alleged to be the natural father, shall be made parties or, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard. The court may align the parties.

Under the language of the uniform act, a parent may not represent a minor child in a paternity proceeding. *M.R.D. by P.D. and R.F.D. v. F.M.*, 805 P.2d 1200 (Colo.Ct.App.1991); *In re*

*Burley (Burley v. Johnson)*, 33 Wash.App. 629, 658 P.2d 8 (1983).

**2.** The Illinois Parentage Act, like New Mexico's Act, allows the child to be represented by a general guardian or guardian ad litem, but does not include the uniform act's absolute prohibition against a parent representing the child. *See* Ill.Rev.Stat. ch. 40, para. 2507(c) (1984) (Section 7).

nor child" in the couple's divorce settlement and agreed judgment. Nor was Shirley appointed Krista's guardian *ad litem*. Under the statutory language and circumstances of this case, Shirley lacks standing to bring the paternity petition on Krista's behalf.

*Koenig*, 156 Ill.Dec. at 387–88, 570 N.E.2d at 863–64.

The facts of *Koenig* are virtually indistinguishable from those before us. We agree with the Illinois court that if custody has been awarded to the party represented as the father in a divorce, the mother can no longer be considered a "general guardian." Since April 1991, when the district court granted custody of Child to Sparks, Mother has not been Child's "general guardian" and thus, in the absence of her appointment as guardian ad litem, is not the proper party to initiate this action on behalf of Child. Moreover, a mother's opposition to a father's paternity could be financially and emotionally detrimental to the child. This creates an obvious conflict of interest which requires the appointment of someone else to represent the interests of the child in such a paternity suit. *Majidi v. Palmer*, 175 Ill.App.3d 679, 125 Ill. Dec. 148, 152, 530 N.E.2d 66, 70 (1988); *Lechner*, 811 S.W.2d at 861; *J.M.L. v. C.L.*, 536 S.W.2d 944, 947 (Mo.Ct.App.1976). Mother was not a proper party to bring this suit on behalf of Child as "next friend." The suit should not have proceeded in the absence of a proper legal representative for Child and Sparks's motion to dismiss should have been granted without prejudice. *See Lechner*, 811 S.W.2d at 861; *cf. Wasson v. Wasson*, 92 N.M. 162, 584 P.2d 713 (Ct.App.1978) (plain error to proceed in termination of parental rights case when child not adequately represented). We must therefore reverse and remand for entry of an order of dismissal without prejudice.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.